

**UNITED STATES**
**COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW
Washington, DC 20581

July 10, 2026

**<u>Via ECF and Email</u>** – <u>ALCarterNYSDChambers@nysd.uscourts.gov</u>
Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *CFTC v. Van Dyke*, No. 1:26-cv-03369-ALC (S.D.N.Y.)

Dear Judge Carter:

  Pursuant to Sections 2.A. and 2.D. of the Court's Individual Practices, Plaintiff Commodity Futures Trading Commission ("Commission") writes to set forth its position regarding the arguments Defendant Gannon Ken Van Dyke ("Van Dyke") intends to raise in his anticipated motion to dismiss the Commission's Complaint.

  As set forth in the Complaint, this case concerns Van Dyke's misappropriation of material nonpublic government information he obtained as a member of the U.S. Army's Special Forces involved with planning and executing operations to remove former Venezuelan president Nicolás Maduro from power to face criminal prosecution in the United States.  Rather than maintaining the confidentiality of that information, as he had a duty and obligation to do, Van Dyke used it for his personal benefit to generate hundreds of thousands of dollars of illicit profits by trading event contracts related to Venezuela and Maduro.

  Van Dyke's pre-motion letter suggests that the event contracts he traded are not swaps subject to the Commission's jurisdiction and that Regulation 180.1, 17 C.F.R. § 180.1 (2025), cannot serve as a basis for liability in this case because it exceeds the Commission's statutory authority.  Letter Motion, ECF No. 18 at 2–3.  As described briefly below, and as the Commission will explain more thoroughly in opposing any motion to dismiss, these arguments fail because the event contracts traded by Van Dyke fall squarely within the unambiguous definition of a swap in Section 1a(47)(A) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 1a(47)(A), and because Regulation 180.1 was properly promulgated pursuant to an express congressional delegation of authority.

  In addition, the Commission notes that the conduct at issue in this case is also at issue in a parallel criminal case pending in this district.  *See United States v. Van Dyke*, 1:26-cr-00156-MMG (S.D.N.Y. filed Apr. 23, 2026).  On July 8, 2026, the U.S. Attorney's Office for the Southern District of New York moved to intervene in this case and seek a full stay of proceedings until the conclusion of the parallel criminal case.  ECF Nos. 21, 22.  If granted, the motion for a stay will negate the need to brief or rule on Van Dyke's anticipated motion to

Hon. Andrew L. Carter, Jr.
July 10, 2026
Page 2

dismiss at this juncture. Under these circumstances, the Commission respectfully submits that the interests of efficiency and judicial economy weigh in favor of deferring the pre-motion conference and briefing on a motion to dismiss until the motion to stay is resolved. If the conference proceeds, the Commission anticipates presenting the following arguments and will respond to any additional arguments that Van Dyke may make in his motion.[1]

## I.    The Event Contracts That Van Dyke Traded Are Swaps

### A.    The Plain Language of the Act Confirms That Van Dyke Traded Swaps Subject to the Commission's Jurisdiction

Congress "defined 'swap' broadly." *United States v. Phillips*, 155 F.4th 102, 113 (2d Cir. 2025). The term encompasses "any agreement, contract, or transaction . . . that provides for any purchase, sale, payment, or delivery . . . that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence." 7 U.S.C. § 1a(47)(A), (A)(ii). The Complaint satisfies this requirement by alleging plausibly that Van Dyke's trading involved (1) a payment dependent on the occurrence or nonoccurrence of an event (*i.e.*, the removal of Maduro from office) that was (2) associated with a potential financial, economic, or commercial consequence.[2]

As to the first prong, the Complaint alleges that prediction market traders "buy and sell event contracts" with a "binary payoff, where the winning side of the contract receives a fixed amount." Compl., ECF No. 1 ¶ 20. The Complaint further alleges that as a result of his trading, Van Dyke "received more than . . . 436,000 USDC.e" after Maduro was captured. *Id.* ¶ 53.[3] As to the potential consequences associated with the event, they need not be felt "right away"— indeed, they may never actually occur—but "Congress chose to use [the qualifier] 'potential,' which is broad." *KalshiEX LLC v. Orgel*, No. 3:26-cv-34, 2026 WL 474869, at *8 (M.D. Tenn. Feb. 19, 2026), *appeal filed sub nom. KalshiEX LLC v. Schuler*, No. 26-5235 (6th Cir. Mar. 23, 2026); *see also KalshiEX LLC v. Johnson*, No. 26-cv-1715, 2026 WL 1223373, at *5 (D. Ariz. May 5, 2026) ("Congress requires that an event be associated with a 'potential,' not actual or probable, consequence."), *appeal filed*, No. 26-2978 (9th Cir. May 11, 2026). The Complaint satisfies the second prong by alleging that "[t]he potential financial, economic, or commercial consequences of Maduro's removal from power were substantial, including but not limited to potential impacts on the global prices of crude oil, Venezuelan government bonds, and the Venezuelan bolívar." ECF No. 1 ¶ 30.

Accepting these allegations as true, as required on a motion to dismiss, the Complaint readily states a plausible claim for relief.

---

[1] The Commission does not intend to amend its Complaint based on the arguments in Van Dyke's pre-motion letter. However, if Van Dyke "supplement[s] [his] motion to dismiss with . . . additional arguments," ECF No. 18 at 2, the Commission reserves its right to amend the Complaint under Fed. R. Civ. P. 15(a)(1).

[2] The event contracts traded by Van Dyke also qualify as swaps under other parts of Section 1a(47)(A) of the Act, including as transactions "commonly known to the trade as [] swaps." 7 U.S.C. § 1a(47)(A)(iv).

[3] USDC is a stablecoin, the value of which is pegged 1:1 to the U.S. dollar. ECF No. 1 ¶ 21. USDC.e is a version of USDC that has been "bridged" from Ethereum to another blockchain ecosystem such as Polygon. *Id.*

Hon. Andrew L. Carter, Jr.
July 10, 2026
Page 3

### B. Van Dyke Was Provided Fair Notice

Van Dyke argues that "due process and fair notice" militate in favor of holding that the event contracts he traded are not swaps because "no similar case has ever been brought." ECF No. 18 at 2. But "due process is not 'violated simply because the issue is a matter of first impression'"; all that is required is that a statute "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Phillips*, 155 F.4th at 132 (citation omitted). As the Commission will explain in opposing any motion to dismiss, neither event contracts[4] nor insider trading claims under the Act[5] are by themselves novel. To the contrary, the Commission's authority over event contracts and its ability to bring cases based on insider trading are well established. Accordingly, Van Dyke had more than ample notice that his conduct was prohibited under the Act.

### C. The Rule of Lenity Does Not Bar the Commission's Claims

Contrary to Van Dyke's suggestion, this case does not implicate the rule of lenity, which typically applies to the "construction of criminal statutes." *United States v. Lanier*, 520 U.S. 259, 266 (1997); *see also United States v. Chestman*, 947 F.2d 551, 565, 571 (2d Cir. 1991) (discussing rule of lenity's application "in the context of Rule 10b–5 criminal liability"). In *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505 (1992), which Van Dyke cites in his letter, the Supreme Court applied the rule of lenity to a tax statute being construed in a "civil setting" because the statute had "criminal applications that carry no additional requirement of willfulness," *id.* at 517. That is not the case here, where the relevant provisions cannot be charged criminally without an additional showing of willfulness. *See* 7 U.S.C. § 13(a)(5). Even if the rule of lenity applied, it would not impact the Court's analysis because the language of the statute is unambiguous. *See, e.g.*, *Vasquez v. Garland*, 80 F.4th 422, 435 n.10 (2d Cir. 2023) (holding that the rule of lenity "has no application" where a statute is unambiguous).

## II. Regulation 180.1 Was Validly Promulgated Pursuant to the Act

Van Dyke also argues that "[t]he CFTC's promulgation of Regulation 180.1 exceeded the CEA's congressional grant of authority." ECF No. 18 at 3. The basis for this conclusory argument is unclear, particularly because the statutory language cited in Van Dyke's letter specifically directed the Commission to promulgate "rules and regulations." ECF No. 18 at 2; *see also* 7 U.S.C. § 9(1). Whatever Van Dyke's argument may be, the Commission acted well within the letter and spirit of 7 U.S.C. § 9(1) when it promulgated Regulation 180.1,[6] and

---

[4] *See, e.g.*, Concept Release on the Appropriate Regulatory Treatment of Event Contracts, 73 Fed. Reg. 25,669, 25,670 (May 7, 2008) (summarizing history of event contracts trading); CFTC Staff Letter No. 93-66 (June 18, 1993), https://www.cftc.gov/sites/default//files/idc/groups/public/@lrlettergeneral/documents/letter/93-66.pdf (issuing no-action letter allowing a facility to list event contracts tied to U.S. and Canadian elections).

[5] *See CFTC v. EOX Holdings L.L.C.*, No. 19-cv-2901, 2021 WL 4482145, at *22 (S.D. Tex. Sept. 30, 2021) (recognizing that insider trading violates Section 6(c)(1) of the Act and Regulation 180.1(a)), *rev'd on other grounds*, 90 F.4th 439 (5th Cir. 2024); *see also In re Motazedi*, CFTC No. 16-02, 2015 WL 7880066, at *1 (Dec. 2, 2015) (finding that respondent violated Section 6(c)(1) of the Act and Regulation 180.1(a) by misappropriating material nonpublic information and trading on it in breach of a duty to his employer).

[6] *See* Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41,398 (July 14, 2011).

Hon. Andrew L. Carter, Jr.
July 10, 2026
Page 4

nothing in its text or administrative history precludes it from forming the basis of liability here.

*    *    *

For the reasons set forth above, the Commission respectfully requests that the Court defer the pre-motion conference and full briefing on Van Dyke's anticipated motion to dismiss— which should ultimately be denied—until the U.S. Attorney's Office's motion to stay is resolved.

Respectfully submitted,

Brian A. Hunt
Julia C. Colarusso (admitted *pro hac vice*)
John W. Dunfee (admitted *pro hac vice*)
Paul G. Hayeck (admitted *pro hac vice*)
COMMODITY FUTURES TRADING COMMISSION
Three Lafayette Centre
1155 21st St. NW
Washington, DC 20581
Phone: (202) 418-5000
bhunt@cftc.gov
jcolarusso@cftc.gov
jdunfee@cftc.gov
phayeck@cftc.gov

*Attorneys for Plaintiff*

cc:    All counsel (via ECF and email)

4